# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KRISTI RENEE MACK,** | : | **Civil No. 3:16-CV-02260** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **NANCY A. BERRYHILL**[1] | : | |
| **Acting Commissioner** | : | |
| **of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction and Litigation History

Kristi R. Mack initially filed a Title II application for a period of disability and disability insurance benefits on February 25, 2013, alleging January 21, 2013 as the onset date of disability. (Tr. 12.) Her claim was initially denied on July 23, 2013, and subsequently, she filed a written request for an administrative law hearing. (Tr. 12.) On February 2, 2015, an ALJ video hearing was held in which the ALJ presided over the hearing from Pittsburgh, Pennsylvania, while Mack appeared in Harrisburg, Pennsylvania. (Tr. 12.) The ALJ then issued a decision unfavorable to Ms. Mack dated February 18, 2015, finding that she was not

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Acting Commissioner, Nancy A. Berryhill, is automatically substituted as the named defendant in place of the former Commissioner of Social Security.

disabled within the meaning of the Social Security Act. (Tr. 26.) Mack filed with the Appeals Council, which denied review of her case. (Doc. 11 p. 2.) Following this rejection, Mack filed this current appeal with the District Court on November 8, 2016. (Doc. 1.) Both parties have briefed this case, and it is ripe for resolution.

Ms. Mack's situation is one that assuredly elicits sympathy from this Court. When Mack was 38 years old, she was diagnosed with and treated for a brain tumor, which caused her to experience significant medical complications for a period of time. However, by the time of the Social Security adjudication of this case in 2015, Ms. Mack had made substantial progress in recovering from this serious medical condition. Citing the extent of her recovery, the Social Security ALJ found that Mack retained the capacity to perform some work and denied her application for disability benefits.

Given the deferential standard of review that applies to Social security Appeals, which calls upon us to simply determine whether substantial evidence supports the ALJ's findings, we conclude that substantial evidence does exist in this case which justifies the ALJ's evaluation of this evidence and the residual functional capacity determination of Mack, which flowed from that assessment of the medical evidence. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner in this case.

## II.  **Factual Background**

Mack is a high school graduate who has an associate's degree in electrical engineering, and who previously held positions as a receptionist and Amazon warehouse trainer. (Doc. 12 p. 1.) When Mack filed for disability in February 2013, she reported that her atypical meningioma tumor (brain tumor), the removal of her atypical meningioma tumor, vision problems/eyes not tracking, and the inability to feed herself, walk unassisted, and speak were all impairments that limited her ability to work. (Tr. 179.) On January 21, 2013, Mack underwent surgery for the removal of her bifrontal meningioma that resulted in another surgical procedure to decompress her frontal lobes and remove a craniotomy bone flap. (Tr. 254-258.) Following her surgery, Mack was hospitalized from February 5, 2013 to March 4, 2013 due to complications such as respiratory failure, swallowing disorder, left upper extremity deep vein thrombosis, (Tr. 283), and fever due to trachea bronchitis. (Tr. 289; 354.) Ms. Mack was admitted to rehab at Pinnacle Health in Harrisburg on March 4, 2013, (Tr. 351), where she participated in physical therapy and occupational therapy 3 hours a day, in addition to speech therapy, until she was discharged on March 29, 2013. (Tr. 354.) It was noted in her discharge summary that Mack had made "gradual, steady progress" in her condition during rehab. (Tr. 354.)

On March 16, 2013, Mack was seen by a consultative examining physician, Dr. Stanton A. Bree ("Dr. Bree"), to whom Mack reported that she was suffering from headaches, double vision, weakness in left eye muscles, slurred speech, short-term memory deficits, poor balance, and difficulty walking, going up stairs, and getting out of chairs. (Tr. 378.) However, Dr. Bree's notes on the patient's functional abilities noted that Mack had "difficulty with prolonged sitting or standing" but she could "ambulate a quarter of a mile," go up and down stairs, use a vacuum cleaner, and independently dress, undress, and take care of herself. (Tr. 379.) Dr. Bree also reported that Mack's vision in her right eye was 20/30, and in her left eye it was 20/25. (Tr. 380.) Dr. Bree further noted that Mack's speech was fairly intelligible though it was slurred, she was able to arise from a chair and from a squat without trouble, she had short-term memory deficit, and she had decreased balance. (Tr. 380-381.)

On July 11, 2013, Mack was seen by consultative psychological examiner Dr. Barry B. Hart ("Dr. Hart") who noted that she had a reasonably good memory, clear, coherent, and goal-directed speech, "she denied any perceptual disturbances or disorders of thinking," and that she had a Global Assessment of Functioning ("GAF") score of 70.[2] (Tr. 468-470.) Dr. Hart's mental Medical Source Statement

_____

[2] A GAF score is a numerical summary of a clinician's judgment of an individual's psychological, social, and occupational functioning on a hypothetical continuum of

4

on Mack's ability to do work-related activities reports that Mack's impairments did not affect her ability to understand, remember, and carry out instructions, her ability to interact appropriately with supervision, co-workers, and the public, or her ability to respond to changes in her work setting. (Tr. 473-474.)

By July 22, 2013, Ms. Mack's treating neurosurgeon, Dr. Barry B. Moore ("Dr. Moore"), evaluated her as having no speech difficulty (only some hoarseness to her voice), mildly abnormal recent and remote memory, and normal attention span and "[f]und of knowledge" when Mack was readmitted to Pinnacle Health for an attempted replacement of her bone flap. (Tr. 477-478.) Dr. Moore further commented that Mack had "recovered quite well over the last several months" from her procedure removing her brain tumor. (Tr. 480.) Dr. Moore also reported in his treatment records from April 8, 2014, that Mack no longer had double vision, and according to notes from September 23, 2014, Mack told Dr. Moore that her

---

mental health on a scale of one hundred. *See Diagnostic and Statistical Manual of Mental Disorders*, 32-34(4th ed. text rev. 2000) (hereinafter "DSM-IV"). The Social Security Administration has recognized that a claimant's GAF score is not considered to have a direct correlation to the severity requirements. *Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 FR 50746-01, 50764-65 (Aug. 21, 2001). However, the administration has noted that the GAF is the scale used by mental health professionals to "assess current treatment needs and provide a prognosis." *Id.* As such, it constitutes medical evidence accepted and relied upon by a medical source and must be addressed by an ALJ in making a determination regarding a claimant's disability.

double vision had resolved but she still struggles with short term memory loss. (Tr. 546.)

At the administrative hearing on February 2, 2015, Mack testified that she believed she was unable to work because she has limited memory, and she wakes up every morning disoriented and suffering from blurry vision and a headache until she can acclimate to her surroundings over the course of hours. (Tr. 40.) She also believes she is disabled because she requires long periods of rest between her daily tasks in caring for her children and home. (Id.)

Based on this record of a steady recovery, the ALJ found that Mack was not disabled within the meaning of the Social Security Act (Tr. 26), and does not have a combination of impairments that meet the requirements of a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15.) The ALJ did find however, the following two severe impairments: (1) status-post bifrontal craniectomy with removal of an olfactory groove meningioma and (2) history of personality changes. (Tr. 14.) As a result of these limitations, the ALJ found that Mack had the residual functional capacity to perform sedentary work. (Tr. 17.) The ALJ also determined that she has the ability to occasionally lift up to ten pounds, climb ramps and/or stairs, balance, stoop, kneel, and crouch. (Id.) She can only stand and/or walk for two hours of the eight hour work day, but she can sit for six hours of the eight hour workday with normal breaks. (Id.) The ALJ adjudged that Mack should never

crawl or climb ladders, ropes, or scaffolds. (Id.) Ms. Mack should also "have no exposure to unprotected heights" and "avoid the use of moving machinery." (Id.) Furthermore, she was "limited to performing work that does not require depth perception" and "simple, routine tasks that are performed in a work environment that are free of fast paced production requirements and involving only simple work related decisions and routine work place changes." (Id.)

Mack asserts two objections on appeal to this decision. First she asserts that the ALJ erred by not finding that Mack met the requirements under listing 12.02. (Doc. 11 p. 3.) Second, she asserts that the ALJ erred in finding at Step Five that Mack was capable of performing sedentary work. (Doc. 11 p. 6.) The parties have fully briefed these issues and this case is ripe for resolution. For the reasons set forth below, we find, under the deferential standard of review that applies to Social Security appeals, that substantial evidence supports the findings of the ALJ. Therefore, we will affirm the decision denying benefits in this case.

## III. <u>Discussion</u>

### A. <u>Substantial Evidence Review – the Role of the Administrative Law Judge and the Court</u>

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine

whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that he experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ

adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in a factual setting where a factually-supported and well-reasoned medical source opinion regarding limitations that would support a disability claim is rejected by an ALJ based upon a lay assessment of other evidence by the ALJ. In contrast, when an ALJ fashions an RFC determination on a sparse factual record or in the absence of any competent medical opinion evidence, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RF C is deferential, and that RFC assessment will not

be set aside if it is supported by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C. §423(d)(5); 20 C.F.R. §§404.1512; <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993).

Once the claimant has met this burden, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

Once the ALJ has made a disability determination, it is then the responsibility of this court to independently review that finding. In undertaking this task, this court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying Plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, when reviewing the Commissioner's final

decision denying a claimant's application for benefits, this court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this court, therefore, is not whether a plaintiff is disabled, but

whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis

for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000) (quoting Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997)); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

   **B.    Legal Benchmarks for the ALJ's Assessment of Medical Treatment and Opinion Evidence**

   The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R.

§404.1527(a)(2) (effective Aug. 24, 2012, through Mar. 26, 2017).[3] Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In deciding what weight to accord to competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally are entitled to more weight. See 20 C.F.R. §404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (effective June 13, 2011, through Mar. 26, 2017) (defining "treating source"). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic

---

[3] Some of the applicable regulations been revised since the ALJ issued her decision in this case. For instance, definition of "medical opinions," contained in 20 C.F.R. § 404.1527(a)(2) of the prior regulation is now designated as § (a)(1) in the revised regulation. Throughout this opinion, the court cites to the version of the regulations in effect at the time the ALJ rendered her decision. Although the revised regulations may be worded slightly differently, the changes have no effect on the outcome of this case.

techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

At the initial level of administrative review, state agency medical and psychological consultants may act as adjudicators. See SSR 96-5p, 1996 WL 374183 at *4. As such, they do not express opinions; they make findings of fact that become part of the determination. Id. At the ALJ and Appeals Council levels of the administrative review process, however, findings by nonexamining state agency medical and psychological consultants should be evaluated as medical opinion evidence. 20 C.F.R. §404.1527(e) (effective Aug. 24, 2012, through Mar. 26, 2017). As such, ALJs must consider these opinions as expert opinion evidence by nonexamining physicians and must address these opinions in their decisions.

SSR 96-5p, 1996 WL 374183 at *6. Opinions by state agency consultants can be given weight "only insofar as they are supported by evidence in the case record." SSR 96-6p, 1996 WL 374180 at *2. In appropriate circumstances, opinions from nonexamining state agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. Id. at *3.

Furthermore, as discussed above, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. This principle applies with particular force to the opinions and treating records of various medical sources. As to these medical opinions and records: "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason, 994 F.2d at 1066)); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by both treating and non-treating sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec.,

667 F.3d 356, 361 (3d Cir. 2011). Thus, "[w]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429)). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

In making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); Turner v. Colvin, 964 F.Supp.2d 21, 29 (D.D.C.2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

It is against these legal guideposts that we assess the ALJ's decision in the instant case.

## C.  **The ALJ's Determination at Step Three is Supported by Substantial Evidence.**

As we observed earlier, Mack contends that the ALJ erred in determining that Mack's impairments did not meet listing 12.02 because the ALJ improperly considered Mack's medical records in combination with Mack's testimony and statements. (Doc. 11 p. 3-4.) As the Commissioner points out in her brief, Mack does not specify which of the Paragraph B criteria should have been found to be met by her under listing 12.02, (Doc. 12 p. 5), rather Mack makes a general argument that there is objective medical evidence in the record that supports a finding that Mack meets this listing. (Doc. 11 p. 4.)

The Court finds it important to emphasize that it is a high bar that Mack must overcome in advancing her Step Three claim. Step Three arguments by Social Security claimants must meet exacting legal standards. At Step Three of the evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments that are acknowledged as so severe as to preclude substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; <u>Burnett</u>, 220 F.3d 112, 119. In making this determination, the ALJ is guided by several basic principles set forth by the Social Security regulations, and case law. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled *per se*, and is awarded benefits. 20 C.F.R. §404.1520(d);

Burnett, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, the plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. §404.1520(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

Here, Mack argues that she qualified as *per se* disabled under Listing 12.02, which concerns "[p]sychological or behavioral abnormalities associated with a dysfunction of the brain." 20 C.F.R. pt. 404, subpt. P, app. 1, §12.02. To meet listing 12.02B, a plaintiff must demonstrate that her mental impairments have resulted "in at least two of the following: (1) Marked restrictions of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration." 20 C.F.R. pt. 404, subpt. P, app. 1, §12.02B. In this case, the ALJ concludes that the medical evidence fails to establish that Mack's mental condition met the requirements of listing 12.02. (Tr. 16.)

Cognizant of the fact that Mack bore the burden of proving that she meets all of the 12.02 criteria, the Court finds that substantial evidence supports the ALJ's

conclusion that Mack did not meet this precise and multi-facetted burden of proof. In arguing that she meets a listing, Mack recites the various ailments that have plagued her but fails to explain how these ailments specifically show that she meets the 12.02B criteria. In contrast, the ALJ methodically addressed each of the 12.02B criteria, explaining how she adjudged the severity of Mack's relevant restrictions. (Tr. 16-17.)

On this score, the ALJ pointed to Mack's testimony at the hearing, as well as notes and medical evidence from Mack's consultative psychological examination with Dr. Hart, to support her finding that none of Mack's impairments were marked. (Tr. 16-17.) Specifically, the ALJ noted that Mack testified at her hearing that she cares for her two children, independently bathes and dresses herself, and can occasionally vacuum and mop. (Tr. 16.) The ALJ found that she has a mild limitation in her activities of daily living because in addition to her testimony, there were notes from Dr. Hart's psychological examination that indicated Mack could clean, shop and do simple cooking. (Tr. 16.) The ALJ found that she has moderate difficulties in social functioning because she has been able to maintain a relationship with her fiancé, has no history of fights or evictions, and testified that she goes shopping approximately every two weeks and "had no difficulty getting along with coworkers." (Tr. 16.) Concerning concentration, persistence, and pace, the ALJ determined that Mack only has moderate difficulties because even though

she could not perform serial sevens, she could perform serial fives and she watches television. (Tr. 16.) Again, the fact that Mack cleans, prepares simple meals, and is the primary caretaker of her children was also found as evidence that Mack's difficulties in concentration, persistence, and pace are only moderate. (Tr. 16.) Finally the ALJ found that Mack does not meet the requirement for repeated episodes of decompensation of extended duration because the requirement is that the claimant must have three episodes, and Mack has only had two such episodes. (Tr. 16); 20 C.F.R. Part 404, Subpart P, Appendix 1, 12(C)(4).

The Court concludes that this evidence relied upon by the ALJ in determining that Mack does not meet her burden of proof at Step Three of this sequential analysis constitutes substantial evidence supporting the finding that Mack is not *per se* disabled. Because this Court's standard of review is based on substantial evidence, which is "more than a mere scintilla," this highly deferential standard constrains the Court to find that there was no error in the ALJ's determination that Mack does not meet listing 12.02. <u>Richardson v. Perales</u>, 402 U.S. at 401.

### D. <u>The ALJ's Determination at Step Five is Supported by Substantial Evidence.</u>

Mack next asserts that the ALJ's determination that she "can perform all or substantially all of the full range of sedentary work" is not supported by medical

evidence, and that the ALJ gave "excessive weight" to state agency reviewing physician Dr. Brenner's Physical Residual Functional Capacity Assessment. (Doc. 11 p. 6.) Mack argues that she does not have "the full range of ability to perform sedentary work, concentrate on tasks, follow directions, and remember instructions," and thus, she should have been found disabled. (Doc. 11 p. 8.) Mack frames these statements of error as a Step Five determination argument, but they are better classified as challenges to the ALJ's RFC and her weighing of the medical evidence.

As we observed earlier, the regulations state that findings by non-examining state agency medical consultants are evaluated by the ALJ as medical opinion evidence, and in appropriate circumstances, such opinions can be given greater weight than the opinions of treating or examining sources. 20 C.F.R. §404.1527(e); SSR 96-6p, 1996 WL 374180 at *3. The example SSR 96-6p provides for when a State agency medical consultant's opinion may be entitled to more weight than that of a treating physician's is "if the State agency medical or psychological consultant's opinion is based on review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." Id. The Court interprets this language to mean that there must be special circumstances explained by the ALJ in order to justify

more weight being given to a medical consultant opinion than to a treating physician opinion.

Here, the ALJ gave significant weight to Dr. Brenner's RFC assessment from June 17, 2013, which found that Mack is capable of working despite the limitations that Dr. Brenner sets forth. (Tr. 22.) The ALJ explained that she assigned significant weight to Dr. Brenner's opinion because it was "generally consistent with the objective findings of record." (Tr. 22.) The ALJ specified that

> treatment indicated that [Mack] had normal range of motion of the extremities, with no more than mild weakness. While her gait was initially slow, she showed improvement and there was no evidence of consistent use of an assistive device. Moreover, notes from the consultative examination indicated that her motor strength of the bilateral upper and lower extremities was five out of five, and her sensation was intact bilaterally. She was able to arise from the chair, squat, and arise from a squatted position without difficulty.

(Tr. 22.) The ALJ pointed directly to treatment notes and medical opinions in the record that support her assignment of significant weight to Dr. Brenner's RFC assessment. In our view, taking the record as a whole, and viewing the evidence through the deferential standard prescribed by law, this explanation demonstrates that the ALJ's assignment of weight to this medical opinion is supported by substantial evidence.

With regard to treating neurosurgeon Dr. Moore's note from October 2013, which stated that Mack was disabled, the ALJ properly explained why she gave it

little weight. (Tr. 24.) The ALJ stated that there was no functional limitation specified as Mack's disability, no indication of the duration of such disability, and such a finding was inconsistent with Dr. Moore's notes about Ms. Mack at that time. (Tr. 24.) She further explained that Dr. Moore's notes documented that Mack was steadily improving with treatment, and that as of October 2013, Mack only had some mild cognitive deficit in memory and functioning. (Tr. 24; 561.)

In determining the weight to be given to a treating source opinion, it is well-settled that an ALJ may discount such an opinion when it conflicts with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion and the doctor's actual treatment notes justify giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005). Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016) (citing Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936) (internal quotations omitted). We also recognize that, "[w]here, . . . , the opinion of a treating physician

conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " <u>Morales v. Apfel,</u> 225 F.3d 310, 317 (3d Cir. 2000). Therefore, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id</u>. at 706-707.

In the instant case, the opinion of the ALJ meets all of the benchmarks prescribed by law. In her decision, the ALJ discounts the medical opinion of a treating source but provides a cogent analysis of the reasons for affording little weight to that treating source opinion, concluding that the doctor's own treatment notes did not fully support the degree of disability reported by this physician. Thus, the ALJ reasonably concluded that reviewing physician Dr. Brenner's opinion that Mack was not disabled was more consistent with treatment notes and findings throughout the record. In sum, because substantial evidence supports the ALJ's determination that Mack did not meet listing 12.02, and because there are appropriate circumstances that warrant the ALJ's decision to assign little weight to Dr. Moore's note that finds Mack disabled, the Court concludes on the deferential

standard of review which applies to Social Security appeals that the ALJ did not err in her decision, and that this decision should be affirmed.

Therefore, we affirm this decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

An appropriate order follows.

Submitted this 1st day of March, 2018.

_s/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge